**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


David Melvin Elliott, Jr.

    v.                                         Case No. 14-cv-530-SM

Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration


**REPORT AND RECOMMENDATION**


      Pursuant to 42 U.S.C. § 405(g), David Elliott moves to

reverse the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits,

or DIB, under Title II of the Social Security Act, 42 U.S.C. §

423.  The Acting Commissioner, in turn, moves for an order

affirming her decision.  For the reasons that follow, I

recommend that the decision of the Acting Commissioner, as

announced by the Administrative Law Judge ("ALJ"), be affirmed.

### I. Standard of Review

      The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of
social security disability benefits unless 'the [Acting
Commissioner] has committed a legal or factual error in
evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS,
76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v.
Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting
Commissioner's findings of fact be supported by substantial
evidence, "[t]he substantial evidence test applies not only to
findings of basic evidentiary facts, but also to inferences and
conclusions drawn from such facts."  Alexandrou v. Sullivan, 764
F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,
360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial
evidence is 'more than [a] mere scintilla.  It means such
relevant evidence as a reasonable mind might accept as adequate
to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d
594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402
U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the
[Acting Commissioner] to determine issues of credibility and to
draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." <u>Irlanda Ortiz v. Sec'y of HHS</u>,
955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations
omitted).  Moreover, the court "must uphold the [Acting
Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529,
535 (1st Cir. 1988) (per curiam).  Finally, when determining
whether a decision of the Acting Commissioner is supported by
substantial evidence, the court must "review[] the evidence in
the record as a whole." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (quoting
<u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

The parties have submitted a Joint Statement of Material
Facts, document no. 10.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

Elliott applied for Social Security disability insurance
benefits in 2008.  That application resulted in a decision from
an ALJ who determined that from March 3, 2005, through April 14,
2010, Elliott was not under a disability.  <u>See</u> Administrative
Transcript (hereinafter "Tr.") 76-77.  For that reason,
Elliott's 2008 application was denied.  This case arises from a

second application for DIB, filed in August of 2012.

In February of 2010, Elliott saw Dr. Mike Repik, complaining of arm pain.  Based upon a physical examination, Dr. Repik diagnosed Elliott with brachial neuritis,[1] shoulder pain, and chronic pain due to trauma.  Dr. Repik prescribed oxycodone for Elliott's brachial neuritis.  See Tr. 438.  About a month later, Elliott saw Dr. Sunita Ray to establish care.  After a physical examination, Dr. Ray diagnosed Elliott with hypertension (controlled), chronic hyperlipidemia, chronic pain, chronic asthma, chronic allergies, depression (controlled), and gastroesophageal reflux disease (controlled).  See Tr. 342.  Dr. Ray prescribed various medications for Elliott's arm pain and depression.  Elliott treated with Dr. Ray through January of 2012.  He began seeing Dr. Restituto Malonso in July of that year, just over three months after he was last insured for disability insurance benefits.  In his initial treatment note, Dr. Malonso identified 10 chronic problems, including "Pain, chronic, other," Tr. 316, and made diagnoses of depression and hyperlipidemia,[2] see Tr. 317.

---

[1] Brachial neuritis is an "[i]nflammation of a nerve," Stedman's Medical Dictionary (28th ed. 2006) 1308, in the arm, see id. at 248.

[2] Hyperlipidemia consists of "[e]levated levels of lipids in

4

In December of 2012, Dr. Hugh Fairley, a non-examining physician, opined that Elliott had the residual functional capacity ("RFC")[3] to stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour work day, and had the RFC to sit, with normal breaks, for a total of about six hours in an eight-hour work day.

On February 28, 2013, Dr. Malonso completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) for Elliott. In it, he opined that, among other things, Elliott could: (1) sit for 30 to 60 minutes at a time and for three to four hours in an eight-hour work day; (2) stand for 10 minutes at a time and for one hour in an eight-hour work day; and (3) walk for 10 minutes at a time and for one hour in an eight-hour work day. When asked what activity Elliott would engage in during the two to three hours during an eight-hour

---

the blood plasma." Stedman's, supra note 1, at 922. The term "lipid" denotes "substances extracted from animal or vegetable cells by nonpolar solvents" such as "fatty acids, glycerides and glyceryl ethers, phospholipids, sphingolipids, long-chain alcohols and waxes, terpenes, steroids, and 'fat-soluble' vitamins such as A, D, and E." Id. at 1105.

[3] As used in the ALJ's decision, "residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

work day when he could not sit, stand, or walk, Dr. Malonso gave

no response.  When asked to "[i]dentify the particular medical

or clinical findings (i.e., physical exam findings, x-ray

findings, laboratory test results, history, and symptoms

including pain, etc.) which support[ed] [his] assessment or any

limitation and why the findings support[ed] the assessment," Tr.

451, Dr. Malonso responded:

> Patient has constant pain on his left side (arm &
> shoulder) which makes it difficult to [perform] daily
> activities.  It is very painful to stand or walk for
> long periods.

Id.[4]  Dr. Malonso indicated that Elliott's physical limitations

had lasted or would last for 12 consecutive months.  See Tr.

455.  He also indicated that the limitations he identified were

current as of February 28, 2013 (nearly a year after Elliott's

coverage for DIB ended), see id., but gave no response to the

following question:

> [I]f you have sufficient information to form an
> opinion within a reasonable degree of medical
> probability as to past limitations, on what date were
> the limitations you found above first present?

Id.  Thus, Dr. Malonso's opinion provides little if any support

---

[4] Dr. Malonso also completed a Medical Source Statement of
Ability to Do Work-Related Activities (Mental) in which he
identified no limitations.  See Tr. 456-58.

for a determination that Elliott suffered the limitations Dr.
Malonso identified before his DIB coverage expired.

In August of 2013, after his hearing before an ALJ, Elliott
was given a consultative orthopedic examination by Dr. Ralph
Wolf, who also evaluated several x-rays.  See 20 C.F.R. §
404.1517 (describing consultative examinations as examinations
provided to claimants at the direction and expense of the Social
Security Administration).  Dr. Wolf completed his narrative
report on Elliott's examination this way:

> RECOMMENDATIONS:  The patient was seated comfortably
> during this examination.  Any full-time sitting or
> driving activity with a moderate amount of walking
> should be possible now and for the long-term future.
> Because of continuing neck and shoulder pain as well
> as some pain and hypoesthesia at the left forearm and
> hand, heavy manual labor and lifting and carrying more
> than 10 pounds is not recommended.  Repetitive
> overhead reaching is not recommended.[5]

Tr. 512.  Dr. Wolf also completed a Medical Source Statement of
Ability to Do Work-Related Activities (Physical), in which he
opined that Elliott could sit, stand, and walk for eight hours
at a time and for eight hours in an eight-hour work day.  In
addition, he indicated that his opinions covered the period from
2000 through the date of his examination.  See Tr. 518.

---

[5] Hypoesthesia is "[d]iminished sensitivity to stimulation."
Stedman's, supra note 1, at 929.

7

After Elliott's hearing, the ALJ issued a decision that
includes the following relevant findings of fact and conclusions
of law:

> 3.  Through the date last insured, the claimant had
> the following severe impairments: morbid obesity;
> asthma; depression; status post bilateral shoulder
> surgeries, right arthrotomy, right biceps tenodesis;
> bilateral shoulder osteoarthritis; status post left
> carpal tunnel and cubital tunnel release; and cervical
> degenerative disc disease (20 CFR 404.1520(c)).
>
> . . . .
>
> 4.  Through the date last insured, the claimant did
> not have an impairment or combination of impairments
> that met or medically equaled the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P,
> Appendix 1 (20 CFR 404.1520(d), 404.1525 and
> 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> I find that, through the date last insured, the
> claimant had the residual functional capacity to
> perform sedentary work as defined in 20 CFR
> 404.1567(a) except that this individual can sit for
> eight hours, stand eight hours, and walk 8 hours
> during the workday; this is an individual who can
> never overhead reach, can occasionally reach, and can
> occasionally push or pull, with the right dominant
> upper extremity; this is an individual who can never
> overhead reach, can occasionally reach, and can
> occasionally push or pull with the left non-dominant
> upper extremity; this is an individual who can only
> occasionally climb ladders, ropes, scaffolds;
> occasionally balance, stoop, kneel, crouch, and crawl;
> no exposure to unprotected heights, only occasional
> exposure to extreme cold, heat, wetness and humidity,
> and only occasional exposure to vibrations; this
> individual cannot be exposed to concentrated fumes,

odors, dust, gases, poorly ventilated areas, or
concentrated chemicals; this is an individual limited
to simple, unskilled work, and limited to work in low
stress jobs with only occasional decision-making
required, and only occasional changes in the work
setting; this individual can only have occasional
interaction with the public, and only occasional
interaction with co-workers.

. . . .

6.  Through the date last insured, the claimant was
unable to perform any past relevant work (20 CFR
404.1565).

. . . .

10.  Through the date last insured, considering the
claimant's age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that the claimant could have performed (20 CFR
404.1569 and 404.1569(a)).

Tr. 13, 14, 15, 20, 21.  Based upon his assessment of Elliott's

RFC, and a hypothetical question posed to a vocational expert

that incorporated the RFC recited above, the ALJ determined that

Elliott was able to perform the jobs of surveillance-system

monitor, call-out operator, and semi-conductor bonder.

### III. Discussion

<u>A. The Legal Framework</u>

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Elliott was under a disability between April 15, 2010, the day after the ALJ's unfavorable decision on Elliott's previous application, and March 31, 2012, the last day on which Elliott was insured for Social Security disability insurance benefits.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for DIB, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and

11

work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Elliott's Claims

Elliott claims that the ALJ erred by failing to properly evaluate Dr. Malonso's opinion, and by failing to properly address the relevant factors when considering his complaints of arm and shoulder pain.  Neither argument has merit.[6]

### 1. Dr. Malonso's Opinion

In his decision, the ALJ had this to say about Dr.

---

[6] Elliott's memorandum of law concludes with the following sentence:

> On behalf of Mr. Elliott we hereby request that the decision of the [Acting] Commissioner be reversed, or in the alternative, that this claim be remanded for an additional hearing with directions to the ALJ that he adhere to the provisions of 20 CFR § 404.1574 and 20 CFR § 404.1573 in determining whether or not the Claimant had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404[.]1526).

Doc. no. 8-1, at 5.  But, 20 C.F.R. §§ 404.1573 and 404.1574 have nothing to do with determining whether an impairment meets or equals the severity of a listed impairment, and Elliott does not develop a step-three argument anywhere else in his memorandum of law.  Accordingly, the court does not understand Elliott to be advancing an actual step-three argument.

Malonso's opinion:

> The record also contains report related to the
> claimant's mental and physical capabilities that is
> signed by an internal medicine practitioner (whose
> name is not legible), dated February 28, 2013.  This
> physician sets forth some limitations related to daily
> activities, but for the most part indicates few work-
> related mental limitations.  The physical limitations
> are not accompanied by any narrative statement to
> support them, other than a notation of "constant
> pain."  This . . . is not accorded any probative
> weight given the lack of any cited objective medical
> findings to support the limitations described therein.

Tr. 19 (citations to the record omitted).  According to Elliott,

the ALJ committed reversible error by failing to: (1) identify

Dr. Malonso as the author of the February 28, 2013, opinion; or

(2) evaluate that opinion in accordance with the applicable

regulations.  Those arguments are not persuasive.

The Social Security regulations direct the ALJ to evaluate

medical opinions by considering the nature of a claimant's

relationship with a medical source (i.e., treatment, examining,

or neither), the length of a treatment relationship and the

frequency of examination, the nature and extent of a treatment

relationship, supportability of the opinion, consistency of the

opinion with the record as a whole, the specialization of the

medical source, and other factors.  See 20 C.F.R. § 404.1527(c).

Here, the ALJ based his decision to give no weight to Dr.

Malonso's opinion on a lack of supportability.  The regulations

13

provide that "[t]he more a medical source presents relevant
evidence to support an opinion, particularly medical signs and
laboratory findings, the more weight we will give that opinion."
20 C.F.R. § 404.1527(c)(3).

As the ALJ correctly observed, Dr. Malonso identified no
objective medical findings to support his opinion.  As for
Elliott, he criticizes the ALJ for failing to follow the
applicable regulations, but does not further develop his
argument by identifying factors the ALJ failed to consider that
should have – or even could have – caused him to give greater
weight to Dr. Malonso's opinion.  The court further notes,
essentially in passing, that several of the relevant factors
work against Elliott's argument.  For example, Elliott did not
begin treating with Dr. Malonso until after the last date he was
insured for disability insurance benefits.  And, in addition,
the treatment Elliott received from Dr. Malonso was for
depression, see Tr. 310, 312, 314, 317, hyperlipidemia, see Tr.
316, 317, and asthma, see Tr. 310, 312, not the shoulder and arm
pain that was the basis for most of the limitations that Dr.
Malonso identified in his opinion.  In short, the ALJ's
explanation for giving no weight to Dr. Malonso's opinion is
supported by substantial evidence and, thus, provides no basis

for ordering a remand.

### 2. Complaints of Pain

In his decision, the ALJ determined that Elliott's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." Tr. 18. According to Elliott, despite Dr. Malonso's identification of pain as the basis for the physical limitations he ascribed, the ALJ failed to address the so-called Avery factors when assessing his complaint of pain. To the contrary, the ALJ specifically listed the Avery factors in his decision, see Tr. 16, and discussed most of them in his decision. And, as with his criticism of the ALJ's handling of Dr. Malonso's opinion, Elliott identifies no particular Avery factor ignored by the ALJ that should have caused him to reach a more favorable credibility determination. Accordingly, Elliott's argument on this point is meritless, and provides the court with no basis for ordering a remand.

### IV. Conclusion

Because the ALJ has committed neither a legal nor a factual error in evaluating Elliott's claim, see Manso-Pizarro, 76 F.3d at 16, I recommend that: (1) his motion for an order reversing the Acting Commissioner's decision, document no. 8, be denied;

15

and (2) the Acting Commissioner's motion for an order affirming her decision, document no. 9, be granted.

Any objections to this report and recommendation must be filed within 14 days of receipt of this notice. <u>See</u> Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. <u>See</u> <u>United States v. De Jesús-Viera</u>, 655 F.3d 52, 57 (1st Cir. 2011), <u>cert.</u> <u>denied</u>, 132 S. Ct. 1045 (2012); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

/s/ Andrea K. Johnstone_____
Andrea K. Johnstone
United States Magistrate Judge

October 22, 2015

cc:  Christopher G. Roundy, Esq.
     T. David Plourde, Esq.